The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. No, good afternoon. We'll hear argument in our first case, Jason Jordan v. T. Large and Ms. McCafferty, if you're ready. Good afternoon, Your Honors, and may it please the Court. My name is Elaine McCafferty and I represent the appellant, Jason Jordan. The question in this case is whether any reasonable theory explains the jury's verdict and deadlock. The jury returned a verdict in favor of Jordan on his retaliation claim and deadlocked on his excessive force claim. Both claims were based on his evidence that Large kicked him for filing grievances and lawsuits against prison employees. Retaliation and- Counsel, can I just get to something at the beginning? Yeah, I appreciate the issue of whether two verdicts can be, should be, can be reconciled or not. Do we even go there if we don't have a verdict in the first case on the excessive force? I mean, how does it, what's the significance of there being a deadlock compared to a verdict, a defense verdict? One way for the Court to resolve this case is to say that a verdict cannot be irreconcilably inconsistent with deadlock because deadlock is the absence of any finding whatsoever. Is there a case law on that? I mean, what's the, help me on, in terms of the authority on that? There's only one case I'm aware of from the Second Circuit. It's the Rivera case cited in the opening brief. And that case says that essentially you can't ascribe meaning to a deadlocked count. But even if, another way to frame the issue in this case is whether deadlock, the deadlock here, can be treated as a finding that the defendant did not kick the plaintiff. Counsel, I'm sorry, I understand that you want to get to your main argument. But, you know, if we were to get to that point, we would have to hold, I think, that we apply sort of the inconsistent verdict framework when there are not two verdicts, when there's just one verdict and then a deadlock. And I know you cite in the brief the Rivera case in the Supreme Court. I think you cite the Yeager case. I was not able to find any, at least modern cases, that do what you're suggesting we should be doing here, treating a deadlock as a verdict for purposes of the inconsistent verdict analysis. Are you aware of any cases that do that? I am not aware of any that the deadlock should not be treated as a finding, that the defendant didn't kick the plaintiff. There's no inconsistency here. There's no inconsistency between the verdict and the deadlock. So the verdict should not have been set aside. I'm sorry, I will just ask one more question about this and I'll let you go on. But was that presented to the magistrate judge, this sort of threshold question, like should we even be analyzing the deadlock and the verdict as though they were two verdicts? The exact argument that deadlock cannot be treated as a finding was not presented. But we did argue that there was no inconsistency between the verdict and deadlock. One way for the court to approach the issue, if they find that this is waived, would be to assume without deciding that the irreconcilable framework can be applied to deadlock. Assume without deciding that and then ask what does the deadlock represent? Does it represent a finding that the defendant did not kick the plaintiff? So counsel, I'm sorry, so I thought you were going to say instead, well, one, I think the narrower argument that Judge Harris is talking about is assumed within the argument we made. But even if it's not and we thought there might be waiver, that waiver shouldn't be recognized because your colleague didn't assert waiver on appeal. They didn't argue on appeal that that you've waived that argument. And so we have effectively a waiver of a waiver. That line of reasoning could apply and that would allow the court to reach this threshold question. There certainly was never a concession that the deadlock represented a finding of fact that the defendant did not kick the plaintiff. And we strongly argued the opposite. But Judge Richardson's reasoning, the issues are so intertwined as to perhaps not require the exact argument that you just can't apply it in these circumstances. Or maybe another way of saying what I think is the same thing, which is that it's always possible to reconcile a hung verdict, a deadlock verdict, because there is no meaningful finding that we can take out of. And so you might say that there's a threshold question of whether the doctrine even applies. But in a sense, really what you're saying is we're And since a hung verdict has no meaning, it can obviously be reconciled with anything. Yes, I agree with that. Thank you, Judge Richardson. So I will turn back, if there are no other questions at this time, I'll turn back to the three reasons, the three theories that there's no inconsistency. The first theory is that the jury couldn't decide whether Large kicked Jordan with a sadistic state of mind. The second, they couldn't decide if Large kicked Jordan with a malicious state of mind. Or third, the jury couldn't decide whether Large kicked Jordan for the very purpose of causing him harm. The definitions of these intent element. Counsel, if I could go to the third one of those. What purpose would there have been other than to have caused harm that is that that is reconcilable with the retaliation? Well, let me just say it this way. Doesn't the retaliation claim require bodily injury? The district court found that and we have not disputed that. And the amount of the compensatory damages supports that. So our theory of the case was that the kick had two purposes. One of the purposes was to retaliate against Jordan for filing grievances and lawsuits. And the second purpose was that it was for the very purpose of causing harm. So the jury had to find the kick had two purposes, one for the very purpose of causing injury, and two that it was to retaliate against him. So the I'm sorry, Judge Maris, go ahead. Okay, well, I want to start I want to ask you a question about what you just said. So we have a whole line of cases, starting with Thompson in 2017, and then Brooks and Dean, that hold that if a prison official uses force, not for some justified purpose, like maintaining order or protecting safety or discipline, but instead to retaliate against a prisoner because the prisoner has done something that made the official angry. That satisfies the subjective prong of an excessive force claim that does count as malicious for purposes of an excessive force claim. And in light and I, you know, I looked at the magistrate's opinion and the instructions, and they just seem to have a force theory here. Those cases, in our view, were not explained in the jury instructions, and the jury instructions tell the jury that force can be used to maintain discipline. I'm looking at jury instruction 18, which is on page 345 of the joint appendix. The second paragraph begins, when deciding whether the and sadistically for the purpose of causing harm, rather than in a good faith effort to maintain or restore discipline, you should consider certain factors. So this clause, rather than in a good faith effort to maintain or restore discipline, the upshot of that clause is that force can be used to for discipline in these circumstances. But counsel, if that were the case, you couldn't have that rationale or that intent and still have a retaliation verdict, could you? I don't understand the question. Which if you're if you're maybe I'm misunderstanding you. So if you're if one of your cases that the kick was to maintain order, and that would not have been malicious and sadistic, doesn't that present a problem with the fact that the retaliation claim requires that the kick be in retaliation of the protected activity? No, because force can be used for multiple reasons. So he could have the defendant could have kicked the retaliate against him. And he could have kicked him because he thought it would be a form of discipline. There can be multiple reasons that motivate a person to do something. If the so based on the jury instructions, if the jury found that it was done to maintain order, wouldn't that have precluded the retaliation claim though? Our position is no, because they can help me understand why I understand your position is no, but I'm, I'm having a little hard time seeing that help me help me walk that line. Because there can be multiple reasons for the use of force. So, and maybe maybe I should back up. This is let's just say the jury couldn't decide whether the force was for discipline. That's just a view of the the they did. That's why they deadlocked. They couldn't decide whether it was used for discipline. I'm sorry, counsel, did anybody argue? Did did the defendant argue that he kicked him in the testicles to maintain discipline? No. So, but you want us to think the jury deadlocked on a question that nobody raised? Well, it would have to be based on some kind of evidence in the case. So here, before the kick happened, Jordan threatened large with bodily harm. So the jury could have found the essentially the defendant kicked the plaintiff to teach him a lesson. And this is some kind of discipline. I do want to excuse me, but again, I'm sorry, that just takes us back to the three cases I rattled off to you before that whole that as a matter of law, when a police when a prison official kicks someone to teach them a lesson, because they're annoyed at something they just did, that counts as malice and sadism. And it absolutely satisfies the subjective prong of the excessive force inquiry. So I'm still not seeing the space. Okay, our position is that that case law is not reflected in the jury instructions. I'm just gonna I want to the definition of sadistic. With my last few minutes, sadistic was defined as extreme or excessive cruelty, or delighting and cruelty. That means a kick that is cruel, is not sufficient to show excessive force. We had to show that the kick was extremely cruel, excessively cruel, or that the defendant delighted in kicking the plaintiff, as 345 of the appendix. One way to explain the deadlock is that the jury could not discern the line between simple cruelty and excessive cruelty. In other words, we had to show something that was more than cruel. So if the jury thought the kick was cruel, that doesn't mean that it's excessive force, they have to find it excessively cruel, as defined in jury instructions. I'd also like to point out that the jury could have credited Jordan's testimony that the kick happened, but discredited his testimony about the extent of his injuries. Jordan testified that he experienced pain that felt like 1000 knives, and that there was blood in his urine after the kick. But there was video footage that the jury could have found, based on the video footage, that he would not have been able to walk at all, if he was kicked as hard as he said he was. In other words, if they discredited this, if the jury discredited Jordan's testimony about the extent of his injury, they could have found that the kick was carried out with very little force, and then disagreed about whether the kick was so cruel that it rose to the level of sadistic. The jury also could have disbelieved every single word of Jordan's testimony and still disagreed about whether Large acted with a sadistic state of mind. Disagreement about the So counsel, let me just make, I'm trying to, you know, pin down exactly, if you assume the kick was not to maintain order. Yeah, because there's at least an argument that if you find excessive retaliation, that can't stand if that was the purpose. And I'm Yeah, it may be true that under Fourth Circuit law, a non-peneological kick is malicious and sadistic, but the jury charges didn't track that language properly? Yes, they did not track that language properly. They said that a kick had to be extremely cruel. That means if it's just cruel, it's not sufficient. So if the jury was said, I can't discern the line between cruelty and excessive cruelty, that could explain the deadlock. I mean, it does seem to me that it would, or at least I wondered whether, from your perspective, at least this case would have been a lot simpler if someone had instructed the jury, like if you find that the kick was for the purpose of retaliation, you also have to find that it was excessive force. And obviously there was no such instruction given. Did you ask for one? No, no party asked for, no party asked for a special verdict form that just said, provide a special interrogatory that asks, did the defendant kick the plaintiff? And were there objections to these portions of the jury instructions that we're talking about now? No. Okay, my time has expired. So I will come back on rebuttal. Thank you. Thank you. Mr. Croslow, I hear from you. Good afternoon, Your Honor. Thank you and may it please the court. If Your Honor don't mind, I'd like to pick up right where this was happening, left off with this question about jury discussion. And then I'd like to address Your Honor's questions at the beginning about the jury. Are you able to hear me okay, Your Honor? Okay. Yes, sir. Yes. Okay, great. As to the jury instructions, we disagree, of course, with Ms. McCafferty's reading. And we think that jury instruction 18 on the mens rea for excessive force gets the Fourth Circuit law exactly right. Instruction number 18 clearly draws a dichotomy between conduct that is excessive, which is to say malicious and sadistic, and conduct that is penologically necessary. And we think that the only way you can point otherwise is by eliminating sort of the second half of the jury perspective that bear on the jury's determination of Sgt. Large's mental state or the mental state requisite for excessive force. So, Judge Harris, as you observed, the Fourth Circuit has a line of cases, including Thompson against Virginia, that makes clear that if the force that was And we think that it is simply not possible, and this is what the district court concluded as well, that the jury could have evaluated the evidentiary record here and credited Mr. Jordan's testimony that the kick occurred without also finding that under these circumstances, this kick, as with regard to the relevant facts about how he was secured while being moved to the segregation unit, the isolation unit. He had a correctional officer on either side of him, holding him at his elbow and at his shoulder, and Sgt. Large was walking some distance behind Mr. Jordan, and Mr. Jordan was in the way of Sgt. Large, then it was a completely unprovoked and completely unnecessary and unexpected act of force by Sgt. Large from behind with no warning to Mr. Jordan. And there's simply no evidence in this record to suggest that there was any possible penological justification if such an act of So, counsel, can I ask you maybe this way? So when I read Instruction 18, it says that you have to find a sadistic, and sadistic is extreme or excessive, and deciding whether it's extreme or excessive, you should consider such factors as, and it lists all five things. And for the most part, those involve around whether there's a justification, a penological justification. But it doesn't say if no penological justification, it is excessive cruelty, right? And so I take Ms. McCafferty's point to be that if we really are trying to do our best to reconcile a jury's verdict, like a juror, which is all we're talking about here, could have thought like, this is bad, it's cruel, but it's not a person, at least in theory, you know, suspending a little bit of disbelief here as lawyers could have come to. Why is that not right? Well, I think for two reasons, Your Honor. And the first is that while the way the instruction is worded, this is not an exclusive list of factors, none of these factors that the jury was expressly instructed to consider in evaluating Sergeant Large's mental state are not related to whether the force was justified. So that's the first reason, is that each one of these factors have some relationship to discipline and the need for correctional officers to maintain discipline. The second reason is that in the paragraph immediately preceding those factors, the dichotomy is made express between whether the defendant used force maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline. And so while I take Your Honor's point, there's also definitions of malicious and sadistic above in this instruction. I think if you're reading the instruction as a whole, it's impossible to come away from it without concluding that the dichotomy here, we need to use a force that is excessive and one that doesn't appear in the instruction, but I think it covers the range of arguments that I'm making here, proportional. So that is to say that force that is not excessive is force that is proportional to some need to maintain order. And because there was no... I mean, I'm not disagreeing that a lawyer and a bunch of appellate judges couldn't maybe come to that conclusion. But our question, even if this doctrine applies, is, is it possible for us to imagine that a lay person juror doesn't draw all of these sort of legal conclusions that you're making from a non-exclusive list and infer proportionality from words that don't exist? I mean, that's the challenge that I've got. I mean, I'm not trying to fight you on Thompson versus Virginia. I'm just trying to say that, like, this isn't a question of whether, you know, a bunch of appellate lawyers and judges would, you know, parse these instructions that way, but whether a juror could have hung it up by virtue of sort of thinking this is pretty cruel, but it's not excessively cruel. Yes, Your Honor. And I think the problem with that approach is that it kind of, you're caught on the other horn of the dilemma. If the jury, as you suggest, or a juror, misunderstood the instruction, or if the instruction is legally unsound, then that is not a basis for the relief that Ms. McCafferty is here requesting, which is to reinstate the first verdict. It would be a basis for throwing out the first verdict altogether. No, no, no, no, no. You accepted these jury instructions. So if these jury instructions, for example, instead of what they said, they said, to find it sadistic, his face must have been purple, right, which is, like, totally not in the law, right? But we would be right here and we'd say, listen, the jury could have found that his face wasn't purple, and yes, the Fourth Circuit doesn't permit that consideration, but we just look at the jury instructions, no? I mean, you accepted these jury instructions. You're stuck with them now. Yes, Your Honor, and to be clear, of course, we believe the jury was correctly instructed, and we think that this instruction does reflect the law in the Fourth Circuit on this dichotomy between a necessary use of force and an excessive use of force. And, Your Honor, I don't – I'm happy to take additional questions on that point, but I'd also like to get to the point of questions about the deadlock count. Yes, Your Honor. Before you get to the deadlock issue, I mean, we'll let you answer questions on that, but looking at the district or the magistrate judge's memorandum order, it appears that the basis of the finding was not that, OK, it's a matter of law. If it's not for a security-based purpose, it's necessarily excessive. It appears that it was based more on the amount of the verdict. And so, yeah, I may be wrong, so please correct me if I'm wrong, but it doesn't look like that the magistrate judge was dealing with this issue that we've been talking about here, about whether under Fourth Circuit law you could possibly have a verdict that was retaliatory on the one hand but not sadistic on the other. That doesn't – I don't recall that in the order, and maybe you argued it below, but it looks to me like y'all were more grappling with the evidence that was presented and the amount of the verdict and trying to make sense of all those things. So I guess my question is, am I right in terms of what happened below and how this issue was framed? And we can address whether we can consider this Fourth Circuit line of cases, but what happened below? Well, so yes, Your Honor, I think you are correct. I think that what the $25,000 reward on the retaliation claim establishes is beyond question in our view is that the injury to Mr. Jordan was more than trivial. That's true, but let me just stop you there. I mean, I agree with that. But that standard must be considered in light of our case law that says you must – not may – you must reconcile verdicts if at all possible to do so. So I don't think that's just a blank slate abuse of discretion. It's a blank slate under the umbrella of reconciling them if at all possible. Agreed, Your Honor. And I think that the reason that it's clear the district court was exercising discretion here as opposed to deciding a pure question of law that this court would review de novo is that in the district court's opinion, it is clear that this was a decision based on the evidentiary record. So at JA 529, which is the last page of that memorandum of opinion, the magistrate judge wrote that based on the evidence before the court, this use of force would have been excessive and would have been an intentional act done for no other reason than to – Yeah, I appreciate you pointing to that. And I take it – I think I understand your point to be that view of the evidence is not an abuse of discretion. Am I correct? Correct. Yes, Your Honor. And that's kind of to the point I was just trying to get at. I mean, I don't disagree that a reasonable interpretation of the evidence is that, you know, that verdict amount and given the testimony was that it was malicious and sadistic. I mean, I can certainly – if that's all we were looking at. But I don't – we're not allowed to look at it that way, are we? Aren't we required to say, you know, even if that's reasonable, if there's another reasonable way you can read this where these verdicts are reconcilable, it doesn't matter if the one the judge did was also reasonable. And that's kind of my point that the normal abuse of discretion here isn't really what we're dealing with. I do understand that point, Your Honor. And I think that the answer to the quandary is that the district court did conclude that there was no reasonable – there was no way to reconcile the jury's decision here because it's not the case that on this evidentiary record there was any evidence that permitted the jury to conclude that the kick occurred and that it was retaliatory and not that it was a theft. And so I think that that's the answer to the question you're posing, which is the district court didn't – it's not as though the magistrate was dissenting for a reason to throw out the verdict. It's evident from the opinion that the magistrate's argument properly – in fact, he correctly quotes the standard, which is that the district court has an obligation to reconcile the verdict if at all possible to harmonize the conclusion that the jury came to. But on this evidentiary record, the district court was not able to do that, and I think correctly so. So if Your Honors don't mind, I'd be happy to turn to the question about the deadlocked counts, unless Your Honors have other questions about this issue. So our view is that the deadlocked count can be somewhat compared to an interrogatory under Rule 49B, and because the jury's inability to reach a unanimous result on the excessive force claim is inconsistent with the unanimous result the jury did reach on the retaliation claim, the district court had an obligation to consider whether the jury's verdict could be supported. And so – But help me understand – back up for a second. Why would we consider a hung jury, as you say, analogous to an interrogatory? An interrogatory is a finding itself, right? I mean, that's the jury saying the light was red. Yes, right? That's an interrogatory under Rule 49. Help me understand why we ought to think a non-action by the jury should be interpreted as analogous to an action. Well, because in this specific case, Your Honor, I don't suggest that this is a rule that's necessarily generalizable to every case where there's a verdict in deadlock. But in this case, the elements of the excessive force claim are effectively completely subsumed within the elements that the jury had to find for the retaliation claim. And that, I believe, was the basis for the district judge's conclusion here, is that the jury found, in order to award Mr. Jordan $25,000 on his retaliation claim, the jury necessarily found every fact and every element necessary to the excessive force claim. And so the jury's inability to agree on a verdict on the excessive force claim suggests that something went dry. Yes, Your Honor. How do we even know they didn't agree? Maybe, and the court suggests this in Rivera, maybe they agreed. Like, look, we found for him on retaliation. We gave him $25,000. We're done here. Let's go home. Maybe there was total unanimity on that point. Like, we have no idea what happened here. I mean, this, I think, is the problem with trying to treat a hung jury or a deadlock as though it tells us something about the case. So, Your Honor, it's, of course, true that in, for the most part, we have no idea what happened behind the closed doors of the jury room. But we do have two notes from the jury, including one that was sent to the judge very soon after the jury began deliberating that said we are not going to be able to reach a unanimous verdict. And so the judge inferred from this, and I think reasonably so, that it was not that the jury got together and decided to issue a verdict on one count but not on the other, but in fact that they were genuinely at loggerheads on the excessive force claim and simply couldn't reach unanimity. And what that suggests is that at least one, sorry, Your Honor. Oh, I thought that was a question. What that suggests is that at least one juror was apparently confused as to the relationship between the elements of these claims, which means that the district judge was, or they were hungry, right? Or they were like, they just were hungry, and so they wanted to go home. I mean, you know, I take Judge Harris's point to be, you know, you keep saying presumably and assume that, you know, that this must have been what they thought. But, you know, juries are the worst way to decide disputes except for all others, right? And the point being is that they don't always get things exactly right, right? And so maybe they just decided, one person decided, you know, I just refuse, no matter what the evidence is, no matter what the elements are, I refuse to return a verdict for excessive force because, you know, my grandfather didn't like excessive stuff. I don't know, whatever, who cares, right? The point is we have no idea. I agree with the point, Your Honor, and I'm not suggesting that we try to psychoanalyze the jury. That in this case, on this evidentiary record, effectively had identical elements, identical findings. Counsel, your colleague in the blue brief, they cite the Rivera case from the Second Circuit, and I think the Supreme Court's decision in the Yeager case. And you don't respond to those in your brief, but do you have a theory for how we could rule your way without creating a split with the Second Circuit and without getting crosswise with the Supreme Court in Yeager, which said specifically that it was an error to take the court's treatment of inconsistent verdicts and import it into an entirely different context involving both verdicts and seemingly inconsistent hung counts. Because a hung count is a legal non-event that tells us nothing. What's your theory for how we can come out your way and not be crosswise with that? I think the answer, Your Honor, is that in neither Yeager nor in the Rivera case did you have the situation that we have here, where the findings of fact necessary to support verdicts on these claims are effectively identical. And so the reason why I don't, the reason I don't think you'd be creating any kind of a split is that the court's holding in this case could be extremely narrowly focused on this specific situation, which is where a hung count and a unanimous plaintiff verdict have identical elements and require identical findings of fact based on the evidentiary record, the, yes, Your Honor. I don't understand how else would it come up? I mean, this issue is only going to arise as it did in Rivera. If someone is arguing, that's what's going on. There is no way to reconcile the verdict with the deadlock. Otherwise, the issue doesn't arise. I don't understand how that would be a narrow holding that would avoid... was not on all fours as they are, as it is in this case. In this case, it's straightforwardly the case that all of the findings of fact necessary for the excessive force claim are found within the retaliation claim. And so the jury's inability to reach a unanimous verdict on the excessive force claim is logically inconsistent, irreconcilable with its unanimous verdict on the excessive force claim. Your Honor, I see that I'm over time. I'm happy to take additional questions. Do my colleagues have any questions? Nope. Thank you. Thank you, Your Honor. Ms. McCafferty. Thank you. Counsel for large asserted that our reading of the jury instructions eliminates the five factors. I would like to focus on the third factor in instruction 18. That factor is the extent of the injury inflicted. That factor does not have anything to do with whether the use of force was peniologically justified. So that is one place where the jury could have said, I think the force here might have been cruel, but I don't think it's excessively cruel. And I don't think that the injuries warrant a finding of excessive force. For example, Jordan did not have any permanent injuries, and he was able to walk immediately after he was kicked. The jury could have found that the extent of the injuries did not warrant a finding of excessive force. They also could have found that the factors weighed in favor of finding excessive force. I don't know that this matters, but how is that consistent with the $25,000 in actual damages? There's force that could be used that would cause pain and be worth $25,000 worth of damages, but that would not be excessive. The jury instructions allow for that conclusion. In other words, the defendant kicked the plaintiff. We didn't believe him about his extent of his injuries, but we believe that he got kicked. And we think that that was cruel. So we're going to award $25,000 of damages, but it's not excessively cruel. And we don't think there's any evidence that he delighted in cruelty. I mean, I understand what you're saying, I think. And I don't mean to impugn anyone who was, you know, trial counsel about anything. But the case law is so clear that the objective standard for excessive force is quite low. Like any kind of sort of physical damage will do it. And so I guess I just don't understand how there, if the instructions could properly be read so that a juror could think you can kick someone in the testicles for no penologically justified reason and cause $25,000 worth of damage, but that doesn't count as excessive force. I just feel like why didn't someone object to those instructions? That's crazy. Like that can't be reconciled with our law, with the Supreme Court's law. You don't, I don't understand that. But the extent of the injuries. So let's say the jury said, we don't think the kick was justified. We just don't think the injuries are severe enough to be excessive force. We think they're severe enough to deter someone from filing grievances and lawsuits. And to be, to warrant a ward of damages, but not to be excessive force. I mean, I don't, I don't ask, you don't have to answer this, I guess. But couldn't there be a strategic decision by plaintiff's counsel to try to keep these two counts separated, right? You sort of, you'd rather have two bites of the apple than one. And so while you might've been able to get an instruction that tied them together, that sort of told the jury it's all or nothing. You know, plaintiff's counsel might well strategically say, we don't, we actually prefer that not to be the case. We'd rather have two bites of the apple than they just agree with one of our claims. And that's, you know, maybe a good decision, maybe a bad decision, but doesn't seem to me necessarily to be a crazy decision by plaintiff's counsel. I don't know that that's what happened. I think most of these instructions are, are model jury instructions. And so they were all used because in some cases there is no justification for the force. I would like to say, even if all of these factors weighed in favor of finding excessive force, the jury still could have deadlocked about the definitions of sadistic and malicious. And I think I made this clear, but they could have said, I just don't think it's excessively cruel. I only think it's cruel. And then my time has expired. Thank you, your honors. Counsel, thank you both very much. We are sorry we can't come down and greet you in person, but we hope that we will see you soon in Richmond. Thank you. Thank you.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.